IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No.  10-cv-02539-WYD-MEH

UNITED STATES OF AMERICA,

    Plaintiff,

v.

5910 SOUTH OGDEN COURT,

    Defendant.

ANA OROZCO,

    Claimant.

---

**ORDER**

---

I.    INTRODUCTION

    THIS MATTER is before the Court on the United States' Motion for Summary Judgment (ECF No. 33), filed March 19, 2012.  The United States seeks summary judgment on its claim against Defendant 5910 South Ogden Court ("Defendant Ogden Court"), alleging that Defendant Ogden Court is subject to forfeiture under 21 U.S.C. § 881(a)(6).  On April 10, 2012, Claimant Ana Orozco ("Claimant") filed her Response (ECF No. 38) to the United States' motion indicating that a genuine issue of material fact exists as to whether Defendant Ogden Court is properly subject to forfeiture.  The United States filed a Reply (ECF No. 41) on April 23, 2012.

    On April 9, 2012, Claimant's Motion for Leave to Amend Answer Pursuant to Fed. R. Civ. P. 15(a)(2), (ECF No. 35), was filed in order to properly assert the

Claimant's innocent owner defense. Magistrate Judge Michael E. Hegarty recommended that Claimant's motion be denied. (ECF No. 42, Recommendation at 1). Further, the parties were advised that written objections were due within fourteen (14) days after service of a copy of the Recommendation. However, no objections were filed. I affirmed and adopted the Recommendation and the Claimant's motion was denied. (ECF No. 55). For the reasons discussed below, the United States' Motion for Summary Judgment is granted.

## II.     FACTUAL BACKGROUND

By way of background, on October 18, 2010, the United States initiated this *in rem* forfeiture action against Defendant Ogden Court under 21 U.S.C. § 881(a)(6), alleging that it was purchased with drug proceeds. The facts material to my analysis are set forth below. I have, however, reviewed and considered all the admissible facts and evidence.

### A.     Drug Trafficking Organization

In 2007, Gregory Montgomery ("Mr. Montgomery") and Daniel Russell Valdez ("Mr. Valdez") were arrested in Kansas after a Kansas Highway Patrol Officer found 24 kilograms of cocaine hidden in the gas tank of their vehicle. At the time of the arrest Mr. Montgomery and Mr. Valdez were driving a 2003 Land Rover owned and registered to Joseph S. Torrez, III ("Mr. Torrez"). Following their arrest, Mr. Montgomery and Mr. Valdez stated that they were travelling from Denver, Colorado to Atlanta, Georgia, to transport cocaine for a Drug Trafficking Organization ("DTO") headed by Samuel Orozco ("Mr. Orozco"). Mr. Montgomery was recruited in 2006 and transported cocaine

approximately eight to ten times for the DTO before being arrested in Kansas. Mr. Torrez also admitted to his involvement in the DTO. He was recruited around 2001 and served as both a driver and purchaser of vehicles, with funds supplied by Mr. Orozco, used to transport cocaine. On at least six occasions after transporting cocaine for the DTO, Mr. Torrez dropped off load vehicles at Defendant Ogden Court. After further investigation, Benerito Abel Marquez ("Mr. Marquez") was identified as another participant in the DTO. Mr. Marquez told the investigating agents that he was recruited by Mr. Orozco in 2006 while conducting remodeling work on Mr. Orozco's home, Defendant Ogden Court. Mr. Marquez further asserted that he delivered drugs for the DTO and provided security services for Mr. Orozco in both Atlanta, Georgia and Mexico.

In or around May of 2007, the United States opines that Mr. Orozco fled to Mexico after learning of this criminal investigation. Shortly thereafter, Mr. Orozco was indicted in the United States District for the District of Colorado with Conspiracy to Import Cocaine Internationally, Conspiracy to Possess with Intent to Distribute Cocaine, Possession with Intent to Distribute Cocaine, and Money Laundering. A warrant for arrest was issued, however, Mr. Orozco has yet to be apprehended. Mr. Valdez and Mr. Torrez have plead guilty to Conspiracy to Possess with Intent to Distribute 5 Kilograms or More of Cocaine and Possession with Intent to Distribute 5 Kilograms or More of Cocaine. Mr. Marquez has plead guilty to Conspiracy to Possess with Intent to Distribute 5 Kilograms or More of Cocaine. In sum, the United States asserts that the DTO was responsible for distributing approximately 960 kilograms of cocaine between April 2000 and December 2007.

### B.     Defendant Ogden Court Mortgage

On November 9, 2000, the Claimant and her husband, Mr. Orozco, purchased Defendant Ogden Court for $850,000.  A down payment of approximately $230,000 was made and the remaining balance was financed.  An additional earnest payment of $25,000 was applied and the mortgage payments amounted to approximately $3000 per month.  The Claimant, however, is uncertain as to the origin of funds used to make these initial payments.  She has also been unaware of the details of the Defendant Ogden Court mortgage until reviewing the United States' motion regarding its status.

On April 1, 2004, Defendant Ogden Court was refinanced and the property was placed in Mr. Orozco's name only.  Approximately two years later, in the course of marriage dissolution negotiations, Mr. Orozco quit-claimed his ownership interest in Defendant Ogden Court to the Claimant, leaving only the mortgage loan in his name.  Between 2004 and 2011, approximately $522,039.93 was applied to the Defendant Ogden Court mortgage through Wells Fargo account #9402 and JP Morgan Chase/Washington Mutual bank account #6938.  Starting in April 2008, bank records reveal that Defendant Ogden Court mortgage payments were made with funds originating outside the United States.  These funds were electronically routed from various banks in Mexico, to include HHBC and BBVA Bancomer, and were ultimately applied to the Defendant Ogden Court mortgage through Mr. Orozco's account #6938.

The Claimant states that her involvement in the mortgage payment extended from the time Defendant Ogden Court was purchased, in November 2000, until 2006.

From January 2006 through September 2011, during which the Claimant had no involvement in the mortgage payment, a total of $427,039.93 was applied to the Defendant Ogden Court mortgage.

### C.     Orozcos' Finances & Tax Reporting

Between 2000 and 2007, the Claimant was a fulltime mother and did not receive any W-2 wages between 2003 and 2007.  In 2004 and in 2006, subpoenaed purchase agreements show that the Claimant purchased vehicles for $62,188.09 and $68,314.50 respectively.  Initially, both vehicles were partially financed, but were paid off in full shortly after the purchase dates.  The credit applications on both subpoenaed purchase agreements also reveal that the Claimant was employed by Colorado Lending Group 1 LLC with an annual salary of $72,000.  However, though the Claimant acknowledges that Mr. Orozco, at some point, had a business called Colorado Lending Group, she asserts that she was never involved in Mr. Orozco's businesses.

Moreover, the claimant identified her employment history in her interrogatory answers. From 1988 to 2000, the Claimant made $36,000 per year as a hotel Assistant Manager.  In 2007, she made between $2000 and $3000 as a caterer and free-lance pastry chef.  From January to November of 2008, she was a General Manager at Panda Express salaried at $42,000 per year.  From February through July of 2009, she worked as an Office Administrator for Las Huertas and made $2000 per month.  Finally, from November of 2010 to present, she has worked as an Office Administrator for Carova Plastics and is salaried at $45,000 per year.

From 2000 to 2002, the Orozco's reported combined federal taxable income

losses of $297,226. In 2003, they reported a combined taxable income of $3785. They did not file in 2004, and in 2005 they reported a combined federal taxable income of $48,547.

III. <u>STANDARD OF REVIEW</u>

   A. <u>Summary Judgment</u>

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "When applying this standard, the court must view the evidence and draw all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000) (quotation omitted). All doubts must be resolved in favor of the existence of triable issues of fact. *Boren v. Southwestern Bell Tel. Co.*, 933 F.2d 891, 892 (10th Cir. 1991).

   B. <u>Forfeiture</u>

An *in rem* forfeiture proceeding is brought under the "legal fiction" that property itself is criminally at fault or is the progeny of criminal works. *United States v. One Hundred Forty-Nine Thousand Four Hundred Forty-Two & 43/100 Dollars ($149,442.43) in U.S. Currency*, 965 F.2d 868, 876 (10th Cir. 1992). A criminal conviction is not a precondition to a forfeiture proceeding, however, forfeiture proceedings generally involve property that has been subject to, or associated with criminal activity. *United States v. $13,000.00 in U.S. Currency, 2007 Black Dodge Ram SRT Pickup, VIN*

*1D7HA18257S120375*, 858 F. Supp. 2d 1194, 1198 (D. Colo. 2012).  The standard for forfeiture is that the government has the initial burden of demonstrating probable cause that a substantial connection exists between the property and the underlying criminal activity.  *One Hundred Forty-Nine Thousand Four Hundred Forty-Two & 43/100 Dollars ($149,442.43) in U.S. Currency*, 965 F.2d 868, 876 (10th Cir. 1992).  The burden then shifts to the claimant to establish by a preponderance of the evidence that the property did not derive from illegal drug activity or that she did not know about or consent to the illegal drug activity.  *Id.*  A dispute concerning facts that are material in nature "must be 'genuine.'"  *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).  Specifically, the non-moving party must show sufficient evidence that is specific and factual, for a reasonable jury to find in its favor.  *Id.*  To rely on assertions or "denials in the pleadings" is not sufficient.  *Id.*

If, upon rebuttal, the claimant is unable to demonstrate that the property was not involved in drug activity, a showing of probable cause alone will support a judgment for forfeiture.  *Id.* (citing *United States v. One Red Ferrari*, 875 F.2d 186, 188 (8th Cir. 1989)); *see also United States v. The Premises and Real Property at 4492 South Livonia Road*, 889 F.2d 1258, 1267 (8th Cir. 1989) (where a claimant introduces no such rebuttal evidence, summary judgment may be granted for the government solely upon a showing of probable cause).

IV.   ANALYSIS

The United States contends that *in rem* forfeiture against Defendant Ogden Court is proper under 21 U.S.C. § 881(a)(6), alleging that it was purchased with drug

-7-

proceeds. For the reasons discussed below, I agree.

      A.      <u>Whether Defendant Ogden Court is Subject to Forfeiture</u>

Under 21 U.S.C. § 881(a)(6), items of value are qualified for forfeiture when: "(1) furnished or intended to be furnished in exchange for a controlled substance, (2) traceable to a controlled substance exchange, or (3) used or intended to be used to facilitate a violation of the Controlled Substances Act." *U.S. v. $148,840.00 in U.S. Currency*, 521 F.3d 1268, 1270 (10th Cir. 2008). When considering evidence relating to drug transactions, "the court eschew[s] clinical detachment and endorse[s] a common sense view to the realities of normal life applied to the totality of the circumstances." *$13,000.00 in U.S. Currency, 2007 Black Dodge Ram SRT Pickup, VIN 1D7HA18257S120375*, 858 F. Supp. 2d at 1199.

The first significant examination under the probable cause analysis is evidence of Mr. Orozco's involvement in the DTO. For example, the United States contends that convicted members of the DTO, including Mr. Torrez, Mr. Montgomery, Mr. Valdez, and Mr. Marquez, have identified Mr. Orozco as the leader of their drug trafficking business. In particular, the United States asserts that these DTO members stated that they were recruited by Mr. Orozco as load car drivers and/or for security purposes, and were paid in either cash or cocaine for their services. Mr. Torrez was recruited around 2001 and dropped off load vehicles at Defendant Ogden Court on at least six occasions after transporting cocaine for the DTO. Mr. Montgomery was recruited in 2006 and transported cocaine approximately eight to ten times for the DTO before being arrested in Kansas. Mr. Valdez accompanied Mr. Montgomery when they were arrested in

Kansas and confessed that they were transporting cocaine for the DTO. Finally, Mr. Marquez was recruited in 2006. He served as a load car driver and as an unarmed security guard on several occasions.

Further, financial records tend to show that the Orozcos' could not have purchased Defendant Ogden Court without the alleged drug proceeds. On November 9, 2000, the Claimant and her husband, Mr. Orozco, purchased Defendant Ogden Court for $850,000. The Orozcos' applied a down payment of approximately $230,000 and an earnest payment of approximately $25,000, bringing their mortgage payments to approximately $3,000 per month. When applying a common sense view to the realities of normal life to these circumstances, the Orozcos' would need a substantial source of yearly income in order to afford the Defendant Ogden Court mortgage. However, subpoenaed financial records demonstrate otherwise. For instance, while there is no evidence attributing Mr. Orozco's alleged wealth to anything other than the DTO, the Claimant's source of income alone could not have sustained the Defendant Ogden Court mortgage. Two subpoenaed vehicle purchase agreements suggest the Claimant's source of income. Each agreement lists "Colorado Lending Group 1 LLC" as the Claimant's place of employment with an annual salary of $72,000. The Claimant, however, asserts that Mr. Orozco had a business called Colorado Lending Group, but that she was never involved in his businesses. (ECF No. 33-3, at p. 3, ¶ 2). Further, the Claimant's interrogatory answers reveal that she could not have initially purchased or sustained the Defendant Ogden Court mortgage on her income alone.

Additionally, the Orozcos' federal tax report figures are inconsistent with a

common sense view of the type of income needed to afford the Defendant Ogden Court mortgage. For example, from 2000 to 2002, the Orozco's reported combined federal taxable income losses of $297,226. In 2003, they reported a combined taxable income of $3785. In 2004, they did not file and in 2005 they reported a combined federal taxable income of $48,547. Again from a commonsensical perspective, these figures are not in line with the realities of sustaining a $3000 monthly mortgage payment and purchasing two vehicles valued at $62,188.09 and $68,314.50; particularly when no evidence is offered to counter the commonsense view of the circumstances.

Based on the facts alleged, I find that the United States has shown by a preponderance of the evidence that Defendant Ogden Court was purchased with drug proceeds. Considering the totality of the circumstances, there is probable cause to believe that Defendant Ogden Court was purchased with proceeds traceable to illegal drug activity. See *United States v. $242,484.00*, 389 F.3d 1149, 1160 (11th Cir. 2004). Evidence obtained during the course of the United States' investigation corroborates its assertion that Defendant Ogden Court was purchased with drug proceeds.

Accordingly, the burden shifts to the Claimant to produce specific and factual evidence demonstrating that Defendant Ogden Court is not subject to forfeiture. To rebut the United States' claim, the Claimant states in her Answer that she "has insufficient information at this time to admit or deny [these] allegations and therefore denies the same" and/or invokes her 5th Amendment right against self-incrimination. (ECF No. 15). In her Response, the Claimant asserts that no reliable evidence tends to establish that Defendant Ogden Court was purchased with drug proceeds, or that she or

Mr. Orozco were involved in any crime. (ECF No. 38, at 11). However, the Claimant has not brought forth a genuine dispute. She fails to show sufficient specific and factual evidence for a reasonable jury to find in her favor. *See Clifton*, 924 F.2d at 183. Further, she merely relies on assertions and denials in the pleadings, which is insufficient to rebut a forfeiture claim. *Id.*

In view of that, I find the Claimant's response unpersuasive. She has failed to show sufficient specific and factual evidence to rebut the United States' assertions. Accordingly, since the Claimant has failed to sufficiently rebut the United States' corroborated contention that Defendant Ogden Court was purchased with drug proceeds, I conclude that Defendant Ogden Court is subject to forfeiture.

B.     Whether Claimant would have Prevailed on an Innocent Owner Defense

I next look at the merits of an innocent owner defense, despite its inartful omission from the Claimant's Answer to the United States' Complaint. As detailed in the introduction, the Claimant's attempt to amend her Answer to properly plead an innocent owner defense was denied without objection from the parties. *See supra* Part I. Specifically, the Claimant's amendment was "unduly delayed and prejudicial to the Unites States." (ECF No. 42, at 6). Nonetheless, for the reasons discussed below, I find that the Claimant would not have prevailed on an innocent owner defense.

The Claimant contends that she is an innocent owner because "the acts or omissions alleged in the Complaint were committed without her knowledge." (ECF No. 34, at ¶ 44). She further contends that she is an innocent owner as defined by 18 U.S.C. § 983(d) because "she did not know of the conduct giving rise to forfeiture."

(ECF No. 34, at ¶ 45).

18 U.S.C. § 983(d) provides: "[a]n innocent owner's interest in property shall not be forfeited under any civil forfeiture statute. The claimant shall have the burden of proving that the claimant is an innocent owner by a preponderance of the evidence." Thus, the United States is not obligated to show that the owner knew of the criminal activity, "[b]ecause the innocent owner defense is an affirmative defense." *U.S. v. 16328 S. 43rd E. Ave., Bixby, Tulsa County, Okla.*, 275 F.3d 1281, 1284-85 (10th Cir. 2002). Further, "we are not constrained to accept denials supported by a mere scintilla of evidence." *Id.* Such denials, when for instance the owner's alleged unawareness is actually "willful blindness," are insufficient to maintain an innocent owner defense. *Id.* Moreover, colorable affidavits are insufficient to preclude summary judgment. *Id.*

The innocent owner defense can be asserted in two ways. First, when property interest exists contemporaneously with conduct subjecting the property to forfeiture, "the term 'innocent owner' means an owner who--(i) did not know of the conduct giving rise to forfeiture; or (ii) upon learning of the conduct giving rise to the forfeiture, did all that reasonably could be expected under the circumstances to terminate such use of the property." 18 U.S.C. § 983(d)(2)(A). Likewise, when a property interest exists after conduct subjecting the property to forfeiture, "the term 'innocent owner' means a person who, at the time that person acquired the interest in the property--(i) was a bona fide purchaser or seller for value . . . ; and (ii) did not know and was reasonably without cause to believe that the property was subject to forfeiture." 18 U.S.C. § 983(d)(3)(A).

"[T]he term bona fide purchaser . . . is generally understood to mean [o]ne who

has purchased property for value without notice of any defects in the title of the seller. *U.S. v. Guerra*, 216 F. App'x 906, 910 (11th Cir. 2007). "Bona fide purchasers for value . . . having engaged in or benefitted from a transaction that the law accepts as capable of creating property rights instead of merely transferring possession, are entitled to test their claim of ownership under § 881(a)(6) . . . ." *U.S. v. Parcel of Land, Bldgs., Appurtenances & Improvements, Known as 92 Buena Vista Ave., Rumson, N.J.*, 507 U.S. 111, 142-43, 113 S. Ct. 1126, 1144, 122 L. Ed. 2d 469 (1993).

Here, the Claimant's property interest, based on the facts alleged, existed after conduct occurred subjecting the property to forfeiture. The drug trafficking activity commenced in April 2000 and Defendant Ogden Court was later purchased with those proceeds in November 2000. *See, e.g.*, *U.S. v. Hooper, 229 F.3d 818, 822* (9th Cir. 2000) ("[p]roceeds of crime . . . do not precede crime."); *see also U.S. v. $13,000.00 in U.S. Currency, 2007 Black Dodge Ram SRT Pickup, VIN 1D7HA18257S120375*, 858 F. Supp. 2d 1194, 1204 (D. Colo. 2012). Accordingly, focusing on § 983 (d)(3)(A) of the innocent owner provision, the Claimant must show that she was a bona fide purchaser of Defendant Ogden Court for value and that she "did not know and was reasonably without cause to believe that the property was subject to forfeiture." 18 U.S.C. § 983(d)(3)(A).

The Claimant's financial records and admissions reveal that she is not a bona fide purchaser for value. The Claimant most recently obtained legal title to Defendant Ogden Court when Mr. Orozco quit-claimed his ownership interest to her in 2006, during which time she did not receive W-2 wages. Further, she is uncertain as to the origin of

funds used to make the initial payments and was unaware of the details of the Defendant Ogden Court mortgage until reviewing the United States' motion regarding its status. Based on the foregoing, the quit-claim was merely a transfer of possession and not a purchase for value. Accordingly, irrespective of whether the Claimant had reason to believe that Defendant Ogden Court was subject to forfeiture, evidence reveals that she is not a bona fide purchaser of Defendant Ogden Court. Therefore, even if she had properly asserted the innocent owner defense, the Claimant is not an innocent owner under 18 U.S.C. § 983(d).

V.   CONCLUSION

Based on the foregoing, it is

ORDERED that the United States' Motion for Summary Judgment (ECF No. 33), filed March 19, 2012, is **GRANTED**. Defendant Ogden Court is hereby forfeited to the United States. Accordingly, it is

FURTHER ORDERED that both the final trial preparation conference set for March 4, 2013 and the jury trial set for March 18, 2013 are **VACATED**.

Dated:   December 20, 2012

BY THE COURT:

s/ Wiley Y. Daniel
WILEY Y. DANIEL,
CHIEF UNITED STATES DISTRICT JUDGE